Arnold G. Fraiman, J.
Petitioner, a Boman Catholic priest, is an announced candidate in the June 23, 1970 primary election of the Democratic Party for the nomination for the office of Member of Congress from the 21st Congressional District. The Election Law (■§ 137, subd. 1) provides that a candidate in a primary election must be a duly enrolled member of the party whose nomination he seeks at the time he files his petitions.
In 1963, petitioner registered as a voter in the 33rd Election District, 77th Assembly District, Bronx County, where his parish house was located. However, neither at the time of his original registration nor thereafter did he enroll as a member of a party, having enrolled instead as a “blank”. On October 4, 1969 petitioner, having changed his domicile to 225 Sullivan Street in Manhattan, registered to vote in the 6th Election District, 63rd Assembly District, New York County. At that time, he enrolled as a member of the Democratic Party. Petitioner alleges that he subsequently changed his domicile back to The *291 Bronx, where he voted in the general election on November 4, 1969 and in the local school board election on March 19, 1970 at the 33rd Election District, 77th Assembly District — the district in which he had registered in 1963. Petitioner never voted at his place of registration in New York County.
On April 3 of this year petitioner appeared before the clerk of the Board of Elections, Bronx County, and requested that his enrollment as a member of the Democratic Party in New York County be transferred to The Bronx. Section 386 of the Election Law provides for such transfer 1 ‘ if after being enrolled in a party, a voter shall change his residence to another election district of the same * * * city * # * provided he registers from his new residence address. ” It further provides that a transfer pursuant thereto shall take effect “ at the first primary election which occurs no earlier than thirty days following such transfer.”
The Board of Elections refused to transfer petitioner’s enrollment on the ground that, by reason of his having voted in The Bronx subsequent to his registration and enrollment in New York County, his New York County registration and enrollment were “null and void.” Petitioner thereupon commenced this proceeding under article 78 of the CPLR to compel the Commissioners of the Board of Elections to effectuate the transfer.
The issue thus presented may be simply stated as follows: Did the act of voting by petitioner in The Bronx subsequent to his having registered and enrolled in a party in New York County automatically nullify his New York County registration and enrollment ?
If the answer is in the negative, petitioner is entitled to the relief he seeks. On the other hand, if petitioner’s registration and enrollment in New York County were automatically canceled by reason of his having voted in The Bronx, the Board of Elections’ refusal to transfer his enrollment was proper. It should be noted that the effect of such a determination would be to preclude petitioner from running in the primary, inasmuch as a new enrollment by him at this time would not be effective until after the general election in 1970. (Election Law, § 369; Matter of O’Connor v. Power, 22 N Y 2d 772.)
From both a legal and equitable standpoint, it would seem that petitioner must prevail.
Subdivision 1 of section 406 of the Election Law provides that “ the board of elections shall cancel forthwith the previous registration of a registrant * * * who registers from a residence address in an election district other than that in which he was registered previously ”. It then goes on to specify those *292 other circumstances under which the hoard shall also cancel forthwith a voter’s registration. They include the voter’s death, his adjudication as an incompetent, and his conviction as a felon.
It is clear that, pursuant to subdivision 1 of section 406 the board was required to cancel petitioner’s Bronx registration as soon as he registered in New York County. It did not do so, and by its omission it thereby enabled petitioner to vote in The Bronx on two occasions after his registration in New York. Apparently in an effort to atone for this oversight, the board now maintains that petitioner’s New York County registration and enrollment are “ null and void ” by reason of the votes he cast in The Bronx — votes which, as noted above, were made possible by the board’s own nonfeasance. The inequity of such a position is manifest on its face. But even more important, by taking this position the board would appear once again to be acting in direct contravention of specific provisions of the Election Law. As noted, subdivision 1 of section 406 delimits those occasions on which the board shall cancel a voter’s registration ‘ ‘ forthwith ’ ’. The act of voting in another district is not one of the instances set forth in subdivision 1. Hence, the board was not authorized to summarily treat petitioner’s New York county registration and enrollment as a nullity, but instead was obligated to comply with the provisions of subdivision 2 of section 406, which applies to “ all other cases,” and which outlines the procedure to be followed in .such other cases if the board desires to cancel a voter’s registration. Subdivision 2 states: “ 2. In all other cases [than those set forth in subdivision 1], whenever such board has reason to believe that a registered voter may no longer be qualified to vote from the address of his registration, it shall notify him by first class mail to appear before such board and show cause why his registration should not be cancelled.” (Emphasis added.)
By voting in The Bronx, petitioner obviously gave the board reason to believe that he was ‘1 no longer * * * qualified to vote from the address of his registration” in New York County. (Election Law, § 150; see Matter of Roosevelt v. Power, 22 Misc 2d 1074, revd. 10 A D 2d 943, revd. 8 N Y 2d 869; Matter of Curtiss, 140 Misc. 185; Matter of Sumner, 102 N. Y. S. 2d 478.) Thus, if the board wished to cancel petitioner’s New York County registration and enrollment, it was required to notify him by first-class mail of its intention to do so and provide him an opportunity for a hearing before taking any action. However, the board did none of these things in this case. Petitioner received no notice of the board’s intention to cancel his New York registration nor was he afforded a hearing. The first *293 indication he received that his New York County registration was “ null and void ” was on April 3, 1970, when he applied to the board, pursuant to the provisions of section 386 of the Election Law, to transfer his enrollment as a Democrat from New York County to The Bronx.
The board having failed to comply with the provisions of subdivision 2 of section 406, petitioner’s New York registration and enrollment are still valid and he is entitled to avail himself of the provisions of section 386.
It should be noted, in conclusion, that it is nowhere suggested that petitioner’s registration and enrollment in the Democratic Party in New York County on October 4,1969 were done for the purpose of circumventing the Election Law. Indeed, assuming he had remained a resident of The Bronx, petitioner could have enrolled in the party in that county on that date with exactly the same effect as his enrollment in New York County. Moreover, the validity of petitioner’s present domicile in The Bronx and his domicile in New York County at the time of his registration and enrollment there are not challenged or even questioned by the Board of Elections. Finally, although the votes cast by petitioner in The Bronx in the general election in 1969 and the school board election in March, 1970 may technically have been invalid, they were so not through any conscious design by petitioner.
For all of the foregoing the court concludes that by reasons of both law and equity petitioner must prevail. The board ié directed to cancel petitioner’s registration in The Bronx, if it has not already done so, reregister him in that county, and transfer his enrollment in the Democratic Party from New York County to The Bronx, as of April 3,1970.